UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SOUTH TAHOE PUBLIC UTILITY
DISTRICT, a public utility
entity,

        Plaintiff,

  v.

1442.92 ACRES OR LAND IN
ALPINE COUNTY, CALIFORNIA;
F. HEISE LAND & LIVESTOCK
COMPANY, INC., a Nevada
corporation, WILLIAM WEAVER;
EDDIE R. SNYDER; CROCKETT
ENTERPRISES, INC., a Nevada
corporation,

        Defendants.

NO. 2:02-cv-0238-MCE-JFM

ORDER

----oo0oo----

Through the present motion, Defendant Integrated Farms, LLC ("Integrated Farms") seeks an award of litigation expenses against Plaintiff South Tahoe Public Utility District ("the District") pursuant to the provisions of California Code of Civil Procedure § 1250.410. Integrated Farms has also filed its Bill of Costs following the jury's verdict in its favor.

///

1 As set forth below, Integrated Farms' Motion for Litigation
2 Expense is denied and its request for costs will be taxed, in
3 part.
4     On April 27, 2006, the jury rendered a verdict in this
5 eminent domain action for Integrated Farms in the amount of
6 $12,659.439.00.  That verdict represented the just compensation
7 due Integrated Farms for the District's acquisition of its so-
8 called Heise Ranch.  The only issue before the jury was the
9 amount of just compensation.  In now arguing its entitlement to
10 an addition $2,288,853.00 in attorney's fees and litigation
11 expenses, Integrated Farms points to the disparity between the
12 District's offer and the ultimate jury award as evincing
13 unreasonableness on the District's part and due care with respect
14 to its own pre-trial position in resolving the case, which was
15 far closer to the jury verdict than the District's final offer.[1]
16 Both sides agree that Integrated's entitlement to litigation
17 expenses, if any, is governed by California law and controlled by
18 application of California Code of Civil Procedure § 1250.410.
19     Section 1250.410(a) requires the Plaintiff, at least twenty
20 days before trial on issues relating to just compensation, to
21 file and serve its final compensation offer.  Similarly, within
22 the same time frame, the defendant must likewise indicate its
23 final demand.
24 ///

---

[1] Even Plaintiff does not dispute the reasonableness of Integrated Farms' demand given its relatively close proximity to the jury's award.  See Pl.'s Opp. 3:11-12.  Consequently, as set forth below, the reasonableness of the District's final offer becomes the crux of this Motion.

1 In subdivision (b), the statute goes on to provide that
2 litigation expenses may be awarded to the defendant if the Court
3 finds the plaintiff's offer to be unreasonable:

> (b) If the court, on motion of the defendant made within 30 days after entry of judgment, finds that the offer of the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed pursuant to Section 1268.710 shall include the defendant's litigation expenses.

8    The statute admonishes that "[t]hese offers and demands
9 shall be the only offers and demand considered by the court in
10 determining the entitlement, if any, to litigation expenses."
11 Cal. Code Civ. Proc. § 1250.410(a).  Other written offers and
12 demands filed and served before or during the trial may be
13 considered only with respect to assessing the amount of
14 litigation expenses after a defendant's entitlement to same has
15 been established.  Id. at § 1250.410(c).
16    On September 22, 2004, twenty days before this trial was
17 initially scheduled to commence on October 12, 2004,[2] the
18 District filed its Section 1250.410 offer to settle for $7.0
19 million.  Integrated Farms, in turn, filed its final demand to
20 resolve the issue of just compensation for $12.1 million.
21 Integrated Farms now claims it is entitled to its litigation
22 expenses because the jury's ultimate award, at almost $12.66
23 million, exceeded its demand by more than $500,000.00, and
24 exceeded the District's statutory offer by some $5.66 million, or
25 55 percent.
26 ///

---

[2] The case was thereafter continued three times before trial actually commenced in April of 2006.

3

1        In L.A. County Metro. Transp. Auth. v. Continental Dev.
2   Corp., 16 Cal. 4th 694 (1994) ("MTA"), the California Supreme
3   Court considered Continental's motion for litigation expenses
4   after the jury's award of severance damages substantially
5   exceeded the MTA's final statutory offer.[3]  In establishing a
6   framework for determining whether MTA's offer was nonetheless
7   reasonable, the MTA court identified the following criteria:

> "Several factors have emerged as general guidelines for determining the reasonableness or unreasonableness of offers.  They are "(1) the amount of the difference between the offer and the compensation awarded, (2) the percentage of the difference between the offer and award... and (3) the good faith, care and accuracy in how the amount of offer and the amount of demand, respectively, were determined." (citation omitted)."

Id. at 720.

Despite the fact that two of the three factors it identified pertained specifically to the numeric discrepancy between the offer and award, the MTA court nonetheless cautioned that "the mathematical relation between the condemner's highest offer and the award is only one factor that should enter into the trial court's determination" as to reasonableness.  Id., emphasis added.

///
///
///
///

---

[3] At $1,015,793.00, the jury's award was more than $800,000.00 in excess of MTA's final statutory offer of $200,000.00.  That offer was less than eighteen percent of the ultimate damages award, and more than double what Continental had offered to take to resolve the litigation (its final statutory demand was $500,000.00).

4

1  Moreover, the court cited approvingly to its prior decision in
2  Redevelopment Agency v. Gilmore, 38 Cal. 3d 790, 808 (1985) as
3  standing for the proposition that the "evidence adduced at trial"
4  must be evaluated by the court in determining the reasonableness
5  of the plaintiff's offer in addition to the simple amount of the
6  ultimate award.  Id.

7       Factually, MTA involved complicated damage assessments
8  hinging on building redesign, noise mitigation, and visual impact
9  in the wake of MTA's condemnation proceedings.  Id. at 701.  The
10 trial court noted that it was primarily the noise and visual
11 impact issues that separated the parties' valuation positions,
12 and found that the difference between the final offer and demand
13 of the parties was attributable to "the different manner in which
14 their respective experts valued [those issues]."  Id. at 721.
15 The trial court went on to explain that it would be unfair to
16 determine that the plaintiff acted unreasonably by relying on its
17 own expert:

> "[E]ach [expert] made highly technical presentations which the court found equally plausible in so far as it was able to understand the opinions.  The court believes it would be unfair to determine that the plaintiff acted unreasonably by relying on its own noise expert in light of the exceedingly technical nature of the evidence presented."

22 Id.

23      While the California Court of Appeal reversed the trial
24 court's denial of Continental's motion for litigation expenses,
25 the California Supreme Court disagreed, stating that "MTA cannot
26 be said to have made its offer unreasonably or in bad faith."
27 Id. at 722.
28 ///

5

The California Supreme Court therefore did not find that the trial court had abused its discretion in denying the motion.

In <u>Escondido Union School Dist. v. Casa Suenos de Oro</u>, Inc., 129 Cal. App. 4th 944, (2005), a post-<u>MTA</u> case, the California Fourth District Court of Appeal was faced with a final statutory offer by the plaintiff of $180,000.00 in juxtaposition with a $370,000.00 total demand from defendant and a jury award of $495,850.00.  In denying defendant's motion for litigation expenses, the trial court, relying on the <u>MTA</u> criteria set forth above, found that the plaintiff had nonetheless exercised good faith, care and accuracy in determining the amount of its offer. The trial court noted that the central issue presented by the case - whether or not manufactured homes were "improvements pertaining to realty"- was a complex one as to which defendant was not required to abandon its position before trial.  The Court of Appeal affirmed, deciding that the trial court's finding of reasonableness was supported by substantial evidence.  The Court of Appeal agreed with the trial court in finding that the key issue was a novel one, with the argument advanced by the plaintiff "by no means frivolous." <u>Id.</u> at 986.  The court noted that "[a] condemning agency need not "compromise its legal position just to avoid litigation." <u>Id.</u>, citing <u>San Diego Metro. Transit Dev. Bd. v. Cushman</u>, 53 Cal. App. 4th 918, 933 (1997).

Applying the principles gleaned from <u>MTA</u> and <u>Escondido</u> to the present case, two primary issues emerge.

///

///

///

First, the question of whether excess water rights could enhance the overall value the Heise Ranch, despite the strictures of the so-called "unit rule",[4] was hotly contested by the parties through the expert testimony they offered. Whether or not a ready market was available, as well as whether excess water rights could be transferred even if such a market did exist, was disputed.

Second, the parties' positions diverged dramatically with respect to what the "highest and best use" of the Heise Ranch was for purposes of valuing the land. Integrated Farms argued that the Ranch should be valued on the assumption that a planned 268 unit development community could be constructed on the site, whereas the District claimed that only development with far less density (continued agricultural operations with the potential for more limited residential development) was feasible.

The respective positions of both Integrated Farms and the District were reasonable as to both of these issues. The District's position that the "unit rule" still applied, and that the jury should reject any enhanced value to the land based on excess water rights, was not patently unreasonable. On the other hand, given the property's abundant water, it was similarly not unreasonable for Integrated Farms to claim that this factor augmented property value despite application of the "unit rule".

///

---

[4] The "unit rule" embodies the notion that just compensation for condemned property cannot be determined by separately valuing, then adding, the separate components of land value. See U.S. v. 6.45 Acres of Land, 409 F.3d 139, 146 (3rd Cir. 2005; City of Stockton v. Albert Brocchini Farms, Inc., 92 Cal. App. 4th 193, 200 (2001).

7

Further, the same mutually defensible position exists with respect to development density bearing on the "highest and best use" of the Heise Ranch. Depending on how the jury viewed these arguments, the value of the property could easily have shifted dramatically. As in MTA, resolution of these issues hinged on technical testimony from experts for both sides. It was not unreasonable for the District to refrain from abandoning its position in that regard, and in accord with Cushman, the District's position was "by no means frivolous."

While Integrated Farms argues that the District assigned no value whatsoever to the property's excess water rights, and further did not budge from its own concept of feasible development in determining highest use, that position is misplaced. First, the District's appraiser, Stephen R. Johnson, did testify to using comparable sales prices in reaching his valuation that included the inferiority or superiority of the associated water rights. The District also presented expert testimony controverting the feasibility of Integrated's proposed development. Second, the District's deposit of probable compensation totaled $5.2 million based on its Johnson appraisal. Nonetheless, the District final statutory offer more than $1.8 million higher than that figure, at $7.0 million.[5] The Declaration of Gary Kvistad explains how the District's final offer took into account a higher per-acre value in the event its density/use projections were not accepted by the jury.

---

[5] This distinguishes the present matter from Redev. Agency v. Krause, 162 Cal. App. 3d 860 (1984), a case cited approvingly by Integrated, since in Krause the government refused to offer anything above its appraised value of the property in question. Id. at 866.

1 The District's offer added $1.2 million to account for that
2 risk,[6] and another $1.1 million was added in recognition of the
3 parties' divergent position vis-a-vis water rights. See Decl. of
4 Gary Kvistad, pp. 11-16.[7]

5      Based on the above, the Court declines to analyze the
6 reasonableness of the District's final offer based entirely on
7 the mathematic discrepancy between it and the jury's verdict.
8 Both MTA and Cushman stand for the proposition that a numeric
9 comparison is only one factor to be considered.  Under the
10 circumstances, the District's final offer was reasonable.  The
11 District was not required to assume, as Integrated Farms would
12 appear to allege, that the jury would ultimately "split the
13 difference" between the District's $5.2 million appraisal and
14 Arthur Gimmy's appraisal on behalf of Integrated Farms for $19.0
15 million.  Instead, the District was entitled to rely on its own
16 legitimate position, and the fact it declined to depart from that
17 position on a wholesale basis does not mean it acted
18 unreasonably.
19 ///
20 ///
21 ///

---

[6] Integrated Farms' reliance on Ventura County Flood Control Dist. v. Campbell, 71 Cal. App. 4th 211 (1999), is consequently misplaced since in that the case the plaintiff assigned no enhanced value whatsoever to aggregate deposits on the land, whereas here the District did factor excess water rights into its final offer as discussed below.

[7] According to Kvistad, the District's $7.0 million final offer was ultimately calculated after considering litigation costs and after applying a ten percent discount to account for the overall risk of litigation. Kvistad Decl., 16:16-26.

9

Because the Court finds that the District's final offer was formulated with care and was not unreasonable,[8] it denies Integrated Farm's Motion to Recover Litigation Expenses.[9] As the prevailing party in this litigation, however, Integrated Farms is entitled to its costs pursuant to Local Rule 54-292(f) and 28 U.S.C. § 1920 as follows: court fees in the amount of $589.19; fee for service of process totaling $619.00; court reporter fees of $16,052.35; and necessary fees for exemplification and copying totaling $53,298.76.

///
///
///
///
///
///

---

[8] As indicated above, California Code of Civil Procedure § 1250.410(b) requires a showing that plaintiff's offer is unreasonable, <u>and</u> a showing that the defendants final demand was unreasonable in order to justify imposition of litigation expenses against the plaintiff. <u>See also</u> <u>Santa Clara Water Dist. v. Gross</u>, 200 Cal. App. 3d 1363, 1368 (1988).

[9] Given the Court's determination that no entitlement to litigation expenses has been demonstrated, evidence pertaining to prior efforts to settle the case is not relevant, since only the final statutory offer and demand are pertinent in showing entitlement as stated above. <u>See</u> Cal. Code of Civ. Proc. § 1250.410(a). The propriety of other offers and demands (and, arguably, settlement negotiations) goes only to the amount of expenses awarded, which the Court need not reach. Consequently, in ruling on this motion, the Court did not consider the Declarations of John Huston, John V. Diepenbrock and G. David Robertson. Therefore it declines to rule on the Objections and Motion to Strike filed by the District in response to those declarations. To the extent that the Declaration of Gary Kvistad explains how the District's final $7.0 million offer was formulated, however, that Declaration was directly relevant to the issues posed by this Motion, and the District's objections to those portions of the Kvistad Declaration are overruled.

Costs are therefore taxed in the total sum of $70,559.30. The remainder of Integrated Farms' Bill of Costs is denied.

IT IS SO ORDERED.

DATED: August 30, 2006

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

11